UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:08-CV-30132-MAP

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*)
)
SPRINGFIELD SCHOOL COMMITTEE,        )
)
Plaintiff,              )
)
v.                                   )
)
QUETZAL DOE, By and Through his Educational )
Surrogate Parent BRYAN CLAUSON, ESQ.,      )
THE MASSACHUSETTS DEPARTMENT               )
OF ELEMENTARY AND SECONDARY EDUCATION,     )
And THE BUREAU OF SPECIAL EDUCATION        )
APPEALS.                                   )
)
Defendants.             )
)
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND LEGAL ELEMENTS IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR
SUMMARY JUDGMENT

Plaintiff's Statement of Material Facts in Support of its Opposition to Defendant's
Motion for Summary Judgment

1.  The Plaintiff, Springfield School Committee, was the responsible local

    education agency ("LEA") for Defendant, Quetzal Doe, during the relevant

    time period.

2.  On November 6, 2007, Quetzal Doe's Educational Surrogate Parent, filed an

    expedited hearing request at the Bureau of Special Education Appeals

    ("BSEA")

3. The Hearing Officer at the BSEA rendered a written decision on June 2, 2008. Her decision was based on submission of written documents and arguments with no oral testimony as permitted by BSEA Rule XII and 801 CMR 1.01 (10)(b).

4. The two issues for hearing, as documented in the BSEA decision, were as follows: (1) Whether the Student's repeated absences during the 2007-2008 school year obligated the School District to reconvene the Student's special education Team? And (2) If so, whether the failure to reconvene the Team resulted in the denial of a free, appropriate public education to the Student?

5. In her decision, the Hearing Officer answered both of these questions in the affirmative, and ordered the Plaintiff to provide Quetzal Doe with compensatory services "equivalent to not less than 23 school year days during the summer of 2008." See BSEA decision attached as Exhibit 1 to Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment.

6. On or about July 7, 2008, Plaintiff filed the Complaint in the instant matter seeking reversal of the Hearing Officer's decision, a determination that the actions of the BSEA violated the due process rights of the Plaintiff, and a granting of such other and further relief as the Court deemed just and equitable.

7. On October 21, 2008, Defendant Doe filed a motion for summary judgment and accompanying memorandum of law.

8. Being in receipt of this motion, the Court cancelled the scheduling conference which had been set for November 21, 2008.

<u>Plaintiff's Statement of Legal Elements in Support of its Opposition to Defendant's Motion for Summary Judgment</u>

1. Defendant Doe is not entitled to judgment as a matter of law, and thereby an affirmation of the Hearing Officer's decision because the decision is based on conclusions that are contrary to law.

2. As the moving party at the BSEA, the Defendant Doe bore the burden of proof. In <u>Schaeffer v. Weast</u>, 126 S. Ct, 528 (2005) the Court held that in an administrative hearing the burden of proof is placed on the party seeking relief.

3. There is no legal obligation for a school district to convene a Team meeting when a student is truant from school. In <u>Springfield Public Schools</u>, BSEA # 08-3378, a decision that was issued subsequent to the decision in the case at bar, the Hearing Officer ruled that nothing in the IDEA or Massachusetts law requires a school district to convene a student's team to address absenteeism unless a member of the Team, believing that the absenteeism is related to the student's disability, requests reconvening of the Team."

4. Only if the truancy is related to the student's disability, is the Team responsible for addressing that behavior through special education. In <u>In Re: Attleboro Public Schools</u>, BSEA # 06-0034, the Hearing Officer noted that "[i]n order for Attleboro to have a responsibility to address, through special education services and placement, the behavior of lack of attendance, there

must be a sufficient nexus between this behavior and Student's special education deficits."

5. The First Circuit has addressed the issue of when a student's behavior must be addressed through the IEP process. In <u>Gonzalez v. Puerto Rico Department of Education</u>, 254 F.3d 350 (1st Dir. 2001), the Court held that "question is whether these behavioral disturbances interfere[ ] with the child's ability to learn."

6. Making effective educational progress is a term of art that refers to whether or not an IEP is appropriate to meet the student's needs. The fact that a student does not come to school does not equate with lack of effective educational progress. In <u>In Re: Springfield</u>, *supra*, the Hearing Officer in noting that, "Springfield is correct that the term 'effective progress' is a term of art defined in the Massachusetts special education regulations," pointed out that the First Circuit has defined the relevant inquiry as "whether the IEP 'is reasonably calculated to provide effective results and demonstrable improvement in the various educational and personal skills identified as special needs.'" <u>Lenn v. Portland School Committee</u>, 998 F.2d 1083, 1090 (1st Cir. 1993). The Hearing Officer went on to reason as follows:

> "The goal is that the IEP services allow the student [ ] access to his/her education and that he/she receive meaningful educational benefit consistent with the student's intellectual potential or capacity to learn. <u>Shore Reg. High School Bd. of Educ. v. P.S. 381</u>, F3rd 194, 198 (3rd Cir. 2004). IDEA requires that students be provided with meaningful access to education. <u>Hendrick Hudson Dist. Bd. of Ed. v. Rowley</u>, 458 U.S. 176 (1982). Federal courts have further explained that the 'benefit conferred [by the IEP services] need not reach the highest attainable level or even the level needed to maximize the child's potential.' <u>Lenn v. Portland</u>

4

>       School Committee, 998 F.2d 1083, 1090 (1st Cir. 1993); Rowley,
>       at 197, n. 21. The aforementioned makes it clear that a student's
>       ability to make effective progress within the meaning of the IDEA
>       and the Massachusetts special education regulations refers to the
>       appropriateness of the services in the student's IEP. It presumes
>       that children are participating in educational programs and while
>       receiving educational services, are able to access the curriculum
>       and progress consistent with their individual capacity to learn. The
>       ability to make effective progress in this context is linked to the
>       appropriateness of the IEP."

7. Conversely, the Hearing Office in In Re: Springfield, *supra*, held that "[f]ailure to make effective progress within the meaning of the IDEA presumes failure by the district to offer or implement all or a part of the student's IEP, or that the services are inappropriate and fail to meet the student's needs. A school district cannot be faulted for a student's lack of effective progress when the reason for not accessing the program and services falls on the student's decision no to avail him/herself of an education, or, as in the instant case, extreme absenteeism, unless the student can show that the absenteeism is related to the student's disabilities, something the ESP has not done in the case at bar."

8. The Hearing Officer in the instant case made no findings that the Defendant Doe's truancy was related to his disability, and the Educational Surrogate Parent made no evidentiary showing of such a nexus. As such, the Defendant Doe failed to meet his burden of proof and the Hearing Officer improperly concluded that the school district denied the student a free, appropriate public education. In In Re: Springfield, *supra*, the Hearing Officer noted that "the ESP [Educational Surrogate Parent] provided not a scintilla of evidence to rebut the school's case or to promote its own views that the Student's

5

   absenteeism was related to her disabilities, or that the IEA requires that a student's Team meet every time a student is truant from school.  The ESP relied on the argument that FAPE was per se denied because the IDEA would require Springfield to convene a Team to address a student's absenteeism as the lack of progress that would result from a student's absenteeism.  Within the contest of this case, and without facts to support it, I disagree."

9. In the end, the hearing officer in In Re: Springfield, *supra*, concluded that I find that Springfield did not violate Student's procedural rights by failing to convene the team for the purpose of specifically discussing her absenteeism…[u]ltimately, it is the parents who are responsible to ensure that their children avail themselves of those services by attending school."

10. The Hearing Officer's ruling that failure to convene a team meeting to address truancy resulted in a denial of a free appropriate public education ("FAPE") does not meet the federal and state definition of a FAPE.  In In Re: Arlington Public Schools, 02-1327, the Hearing Officer defined FAPE as follows:

> "First, FAPE means 'special education' and 'related services', and the definitions of these terms are therefore relevant to an understanding of FAPE and will be cited in the discussion below.  Second, in Massachusetts FAPE must be understood as consistent with the provisions within the federal law, and at the same time must meet state education standards.  An analysis of FAPE in Massachusetts therefore requires consideration of the IDEA, accompanying regulations and judicial decisions, as well as state statutes and regulations relevant to special education students.  The Massachusetts Department of Education has also concluded that education standards applicable to special needs students in Massachusetts include the learning standards established through the state curriculum frameworks.  Third, the special education and related services are to be provided in conformity with a student's individualized education program (IEP), as that term is defined and used in federal and state statute and regulations."

11. The Hearing Officer in the instant case improperly awarded compensatory services because the Defendant Doe failed to meet his burden of proof that he suffered educational harm as a result of the violations alleged on the part of the Plaintiff.

12. In In Re: Medford Public Schools, BSEA # 02-1855, the Hearing Officer reviewed the standard for an award of compensatory services as follows:

> The BSEA may order compensatory education to remedy past deprivations of special education rights. Pihl v. Massachusetts Department of Education, 9 F.3d 184 (1st Cir. 1993). A school district that violates a student's procedural rights under federal or state law may be liable where "procedural inadequacies [have] compromised the pupil's right to an appropriate education … or caused a deprivation of educational benefits." Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 ($1_{st}$ Cir. 1990) (citations omitted), cert. denied, 499 U.S. 912 (1991). Thus, for example, "a procedural default which permits a disabled child's entitlement to a free and appropriate education to go unmet for two years constitutes sufficient ground for liability under the IDEA." Murphy v. Timberlane Regional Sch. Dist., 22 F.3d 1186, 1196 ($1_{st}$ Cir. 1994). On the other hand, de minimis, technical procedural violations that do not deprive a student of FAPE will not normally support an award of compensatory service. Roland M., 910 F.2d at 994. Moreover, since compensatory service is in the nature of an equitable remedy, it may be reduced by equitable considerations or defenses such as laches. Thus, for example, an award of compensatory services might be denied or reduced if the parents' conduct contributed to delays or impaired the school's ability to serve the student. Timberlane, 22 F.3d at 1197."

13. In the instant matter, the Defendant Doe did not meet his burden of proof that the Plaintiff caused him any educational harm. Even if there had been such a showing, an award of compensatory services should have been reduced or denied in light of the fact that Defendant did not come to school to access his education.

<u>Plaintiff's Statement of Legal Elements in Support of its Cross Motion for Summary Judgment</u>

1. In order to prevail on a motion for summary judgment, the moving party "must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law… '[t]o be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party's claim.' It is sufficient to demonstrate that 'proof of that element is unlikely to be forthcoming at trial.'" <u>McLaughlin v. Lowell</u>, 8 Mass. L. Rptr. 343 (1998) *quoting* <u>Flesner v. Technical Communications Corp</u>., 410 Mass. 805, 809 (1991).

2. There is no issue of material fact in this case. Neither the Plaintiff nor the Defendant have argued or contested any of the facts as laid out in the hearing officer's decision. This matter is appropriate for a motion for summary judgment and judgment should be entered in Plaintiff's favor for all of the reasons cited above.

3. The hearing officer misapplied the law to the facts of this case to reach a conclusion that is not supportable under federal and state special education laws and regulations.

4. In her decision, the hearing officer acknowledged that since the revision of a prior version of the Massachusetts special education regulations "there has been no explicit statutory or regulative directive establishing the responsibility of the district when a student who is eligible or potentially eligible for special education is chronically absent from school…[n]either the state nor the federal

regulations specifies the circumstances under which reconvening a Team is 'necessary.'" Quetzal v. Springfield Public Schools, BSEA # 08-3309.

5. The hearing officer improperly analogized school truancy with a violation of a school's disciplinary code. Under federal special education laws, a student who is removed from his current educational placement for more then ten days is entitled to a Team meeting and special education services. 20 U.S.C. § 1415 (k); 34 CFR 300.530. The law, however, does not draw this parallel. A student who is disciplined is entitled to due process protections because the school has taken action which results in the student not being in his educational placement. This is a very different scenario then when a student does not access his education because he does not come to school. The hearing officer offered no legal support or precedent for drawing this analogy.

          Respectfully Submitted,
          SPRINGFIELD PUBLIC SCHOOLS
          By Its Attorneys,

          /s/ Regina Williams Tate

          _____
          Regina Williams Tate, BBO # 492780
          Murphy, Hesse, Toomey & Lehane, LLP
          300 Crown Colony Drive
          P.O. Box 9126
          Quincy, MA  02269-9126
          Telephone: (617) 479-5000

/s/ Alisia St. Florian

_____
Alisia St. Florian, BBO # 643908
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive
P.O. Box 9126
Quincy, MA  02269-9126
Telephone: (617) 479-5000

CERTIFICATE OF SERVICE

    I, Regina Williams Tate, hereby certify that I have this day forwarded a copy of the foregoing documents by first-class mail, postage prepaid upon the Educational Surrogate Parent for the Defendant, Quetzal Doe, Bryan Clauson, Esq., 95 State Street, Suite 701, Springfield, MA  01103 and upon counsel the Defendants, The Massachusetts Department of Elementary and Secondary Education and the Bureau of Special Education Appeals, James Whitcomb,. Esq., Office of the Attorney General, Western Massachusetts Division, 1350 Main Street, 4th Floor, Springfield, MA  01103.

_____        _____
Date                                          Regina Williams Tate, Esq.